**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____
                                          :
NICOLAS A. RUSSO                          :
                                          :
                    Plaintiff,            :
                                          :       Civil Action No. 13-06918 (FLW)
        v.                                :
                                          :              **OPINION**
COMMISSIONER OF SOCIAL                    :
SECURITY,                                 :
                                          :
                    Defendant.            :
_____   :

**WOLFSON, United States District Judge:**

      Nicolas A. Russo ("Plaintiff") appeals from the final decision of the Commissioner of

Social Security ("Defendant" or "Commissioner") denying Plaintiff disability benefits under the

Social Security Act. Plaintiff contends that the record does not support the decision made by the

Administrative Law Judge ("ALJ"). Specifically, Plaintiff argues that the ALJ's determination of

Plaintiff's residual functional capacity is unsupported, and that the ALJ did not meet his burden

of proving that there is other work that Plaintiff can perform. After reviewing the Administrative

Record ("A.R."), this Court finds that the ALJ's decision is supported by substantial evidence in

the record, and accordingly, affirms the denial of disability benefits to Plaintiff.

**Procedural History**

      On April 12, 2012, Plaintiff filed an application for disability benefits alleging a

disability onset date of December 28, 2010. A.R. 136. The application was denied on July 31,

2012, A.R. 86. On August 7, 2012, Plaintiff made a request for reconsideration, A.R. 91, which was denied on December 28, 2012, A.R. 92–94. On February 6, 2013, Plaintiff requested a hearing before an Administrative Law Judge. A.R. 95. A hearing was held on May 15, 2013, before ALJ Jonathan Wesner. A.R.32. On May 23, 2013, the ALJ issued a decision holding that Plaintiff was not disabled under the Social Security Act. A.R. 15–26. Plaintiff requested reconsideration on July 26, 2013, A.R. 7–10, and the Appeals Council denied reconsideration on September 12, 2013, A.R. 1–6. Plaintiff filed the present complaint against the Commissioner on November 14, 2013.

**<u>Background</u>**

Plaintiff, a high school graduate, was born in 1983, and was 27 years old at the time of the alleged disability onset date. A.R. 136, 36. Before his disability onset date, Plaintiff had been working as a parts clerk at a car dealership. A.R. 36–37.  Although he had only been at his job for two and a half months before leaving, Plaintiff held his prior job, also as a parts clerk, for five years. A.R. 37. Plaintiff stopped working as a result of chronic fatigue and social anxiety. A.R. 41. In addition, Plaintiff suffers from severe depression, which makes him "very reclusive." A.R. 45. Plaintiff has also been diagnosed with HIV and Hepatitis C. A.R. 42. The medications for HIV, according to Plaintiff, cause nausea, chronic headaches, muscle aches, and chronic fatigue. A.R. 44.

Plaintiff was treated by several doctors for his medical problems, and visited other medical professionals in connection with his application for disability insurance benefits. The relevant findings of Plaintiff's treating and evaluating medical professionals are detailed below.

2

**Review of the Medical Evidence**

**1. Treating Medical Professionals**

Plaintiff's physician, Dr. Christopher Lucasti, provided a General Medical Report, dated May 7, 2012. A.R. 208–10. Dr. Lucasti treated Plaintiff on a monthly or biweekly basis, beginning in November 9, 2009. A.R. 208. Dr. Lucasti diagnosed Plaintiff with HIV, Hepatitis C, and depression, and indicated that Plaintiff had a history of IV drug use. Id. The Report indicated that Plaintiff was being treated with HAART[1], Wellbutrin, Prestiq, Abilify, and Xanax. A.R. 209. Dr. Lucasti noted that Plaintiff suffered no limitations in his ability to lift and carry, stand and/or walk, sit, push and/or pull, or any other disabilities. Id.

Frank Abenante, M.D., a psychiatrist, treated Plaintiff beginning in July of 2009. A.R. 212. In a Psychiatric Report dated May 24, 2012, Dr. Abenante diagnosed Plaintiff with Bipolar disorder, and stated that he presented as awake and alert. A.R. 212–13. According to the Report, Plaintiff was able to recall three of three words immediately and one word at five minutes, as well as events of earlier sessions, events of the past week, and long-term events. A.R. 213. Plaintiff was able to spell "world" forward and backwards. Id. Plaintiff could track conversation but needed frequent refocusing and slow, simplified language. Id. Dr. Abenante described Plaintiff's understanding and memory, sustained concentration and persistence, social interaction, and adaptation as limited. A.R. 215.

Dr. Abenante also wrote a letter dated April 30, 2013. In the letter, Dr. Abenante diagnosed Plaintiff with Major Depression with anxiety, as well as HIV and Hepatitis C. A.R. 226. Dr. Abenante stated that Plaintiff's symptoms included: extreme mood swings; decreased mood with increased anxiety; difficulty coping with stressors; and decreased appetite, weight,

---

[1] Highly active antiretroviral therapy.

energy, activity, motivations, mobility, and ability to function. Id. Plaintiff also had increased

worry and difficulty coping with HIV and his morbidity. Id. Dr. Abenante wrote that plaintiff

had been reclusive and isolated with minimal social interactions, and "is currently unable to

work in a workplace environment." Id.

### 2. Consultative Psychological Evaluation

Plaintiff underwent a Psychological Evaluation with Thomas J. PlaHovinsak, Ph.D., an

agency consultative psychologist, on July 27, 2012. A.R. 218–221. Dr. PlaHovinsak noted that

Plaintiff "does not have any physical problems that limit his ability to stand, lift, walk, or bend,"

other than fatiguing easily. A.R. 219. Dr. PlaHovinsak found that Plaintiff did his own laundry,

managed his own checking account, and had a driver's license. A.R. 219. Dr. PlaHovinsak

opined that Plaintiff was "alert, oriented to all three spheres, and had a clear sensorium, while his

speech was lucid, well modulated, and goal directed." A.R. 220. Plaintiff was described as

tending "to ruminate and dwell on problems, which causes him to feel overwhelmed and to

subsequently manage the stress via avoidance or procrastination." Id. Additionally, Plaintiff

"continues to feel anxious in new situations or in large crowds." Id. Dr. PlaHovinsak noted that

Plaintiff was able to count backwards from twenty to zero in twenty seconds, without error;

recite serial threes; and recall eight digits forward and five digits backwards. Id. Plaintiff also

correctly answered two out of three simple math problems. Id. Dr. PlaHovinsak diagnosed

Plaintiff with Major Depressive Disorder, Generalized Anxiety Disorder, Bipolar Disorder, and

Personality Disorder NOS (avoidant type). Id.

Dr. PlaHovinsak additionally noted that Plaintiff was avoiding treatment for Hepatitis C

due to his anxiety and avoidance behaviors. A.R. 221. Overall, Dr. PlaHovinsak opined that

Plaintiff's prognosis was uncertain "because he is not maximally pursuing treatment for his

problems. Id. Dr. PlaHovinsak found that Plaintiff would be able to follow moderate to complex directions, but would demonstrate moderate-significant problems interacting with others. Id.

**Testimonial Evidence**

**1. Plaintiff's Testimony**

At the hearing on May 15, 2013, Plaintiff testified to his impairments. Under questioning from his attorney, Plaintiff testified that his most recent job had been working as a "parts counterman" at a Ford dealership for two and a half months; he had held the same position at a different dealership for five years previously. A.R. 36–37. That job required Plaintiff to interact with customers and retrieve parts for their vehicles. A.R. 37. Plaintiff typically worked a seven to eight hour day, and spent five or six hours on his feet. A.R. 38. The heaviest item plaintiff was required to carry was over 50 pounds, and he occasionally needed to climb on a ladder to retrieve certain parts. A.R. 39. Plaintiff's earlier jobs were cashier or deli-type positions at McDonald's and Wawa. Id. Plaintiff stated that he left his most recent position because he "was falling asleep at the counter" and had "chronic fatigue." A.R. 41. Plaintiff also had difficulty dealing with the customers: he become "very very nervous and very confused with any social interactions." Id.

Plaintiff testified that he was diagnosed with HIV in 2008 or 2009. A.R. 42. According to Plaintiff, Dr. Lucasti put Plaintiff on the "cocktail or the combination medicines" for HIV, which improved Plaintiff's immune system. A.R. 43. Dr. Lucasti also treated Plaintiff for Hepatitis C, but had not put Plaintiff on "full-blown Interferon treatment" due to fears of interactions with psychiatric medications. Id. Plaintiff stated that the HIV and Hepatitis C cause him to be "chronically fatigued" and "chronically weak." A.R. 42. In addition, the HIV medications "give

5

me nausea constantly"; Plaintiff also complained of "chronic headaches," "muscle aches" and "sometimes my bones hurt." A.R. 44.

Plaintiff indicated that anxiety and nervousness first became "a serious problem" in 2009 or 2010. Id. Plaintiff stated that Dr. Abenante had been treating him for anxiety since 2009, and that Plaintiff saw Dr. Abenante once a month. Id. The treatment Plaintiff received was described as "psychiatric, we talked for a little while and then he prescribes me meds and we just discuss . . . how my life has been." Id. Plaintiff described his psychiatric conditions as including "severe depression." A.R. 45. Plaintiff stated that he became "very reclusive," remaining in his room for 18 hours a day; that he was "very scared to go out and . . . interact with others that I don't know"; and that he became "very fearful and fear my own death." Id. Plaintiff indicated that he usually could not sleep for more than two hours at a time, because his "anxiety starts going." A.R. 46. Thus, he usually alternated between sleeping and watching TV over a twenty-four hour period. Id. Plaintiff felt that the psychiatric medication "just doesn't seem to be helping me." A.R. 49.

With regard to his living arrangements, Plaintiff testified that he lived with his family, namely his parents and two younger siblings, ages 27 and 22. A.R. 45. Plaintiff explained that he "pretty much . . . spend[s] my life" in his room, where he mostly watches TV or sleeps. A.R. 46. Although Plaintiff socialized with his parents and siblings, he usually ate meals in his room. A.R. 46–47. Plaintiff's mother would prepare meals, which Plaintiff would microwave. A.R. 47. Plaintiff's mother also cleaned his room, though it usually "just stays in the state of disrepair." Id. Plaintiff stated that he does no chores, although he will "put in laundry and usually hope that [his mother] finishes it off." Id. Plaintiff indicated that he goes out one or twice a week, "either to the pharmacy, to the doctor, or to Wawa to pick up a pack of cigarettes." A.R 48. Plaintiff

usually would go out with his family. Id. He drove a car "maybe once a month," again usually with a family member. A.R. 48–49.

### 2. Vocational Expert Testimony

Mitchell A. Schmidt, an impartial vocational expert, also testified. Mr. Schmidt defined Plaintiff's past work as being a "parts clerk" which is "heavy duty and semi-skilled." A.R. 51. The ALJ then considered both exhibit 1F (Dr. Lucasti's report), which stated that Plaintiff had no exertional limitations, and 3F (Dr. PlaHovinsak's report), which stated that Plaintiff has "issues with fatigue." A.R. 51. Taking these exhibits into consideration, the ALJ then described the following hypothetical: a claimant who was 30 years old, with a high school education "and the same work experience and training as you gleaned from the record," who had "the ability to lift and carry ten pound[s] frequently," "lift and carry 20 pounds occasionally," and who could "stand and walk for about six hours in an eight-hour workday and sit for about six hours in an eight-hour workday." A.R. 51–52. Mr. Schmidt stated those limitations covered "the full range of light duty, which also covers sedentary." A.R. 52.

The ALJ then considered Exhibit 2F (Dr. Abenante's report), which denoted some kind of mental limitation. Id. The ALJ stated that Plaintiff's prior job was "a people job as opposed to a thing job," meaning "he had to wait on the general public," in contrast with "unskilled work that does not involve any contact with the general public at all." A.R. 53. The ALJ asked whether Mr. Schmidt could "quantify out of the light and sedentary range what percentage of jobs would be thing versus people?" Id. Mr. Schmidt responded that for light duty work 60–70 percent of unskilled jobs were "thing jobs," and that for sedentary jobs "probably closer to 80 percent are thing jobs." A.R. 53–54. The ALJ then asked whether supervisory interaction is "minimal in unskilled work"; Mr. Schmidt replied "Correct. You're shown how to do the job . . . [and] the

supervisor leaves you alone as long as you're working ok." A.R. 54. The ALJ then described another potential limitation, namely the need to "concentrate on your job," and to "come to work, stay all day and be productive." Id. The ALJ noted that a person with a GAF score of 60 is "not going to be able to sustain any semi-skilled or skilled work," and stated that a person in that range "even if he was physically capable of doing that counter job, he wouldn't be able to do it because he doesn't have the mental to sustain [sic]." A.R. 55. Mr. Schmidt agreed, but stated that the same could not be said for unskilled work. Id.

Plaintiff's counsel then questioned Mr. Schmidt. Plaintiff's counsel asked, in unskilled work, where a person is working seven- or eight-hour days, with two fifteen-minute breaks and a lunch hour, "out of each hour, how many [minutes] do you have to be on task?" A.R. 55–56. Mr. Schmidt responded "In general, 53, 54 minutes." A.R. 56. Plaintiff's counsel clarified, that, as far as breaks in unskilled work, "are you allowed extra breaks in there, an extra 10 or 15-minute break?" A.R. 57. Mr. Schmidt responded "No." Id. In response to further questioning, Mr. Schmidt stated that "in general, employers in unskilled work . . . there's a low tolerance for the interruptions in the work, the absenteeism, the lateness." A.R. 57–58. Regarding absences or days off, Mr. Schmidt testified that in unskilled work a person would get "no more than one day per month, and that would include one of those days that a person needed the extra break." A.R. 58.

The ALJ then asked Mr. Schmidt whether, regarding "thing jobs," "wouldn't it be a fair statement that irrespective of whether it was light or sedentary, if that degree of limitation would approach that unacceptable level . . . that's going to apply to all of these jobs." A.R. 58. Mr. Schmidt agreed, stating that "the standard for pace, persistence, concentration, attention, attendance, that's not affected by what you're doing." A.R. 58–59. The ALJ then limited the

questioning, stating "I could get . . . him to name a job and if the limitations I found to that degree would go out the window, and I can get him to name another job and the same thing would happen. So we're just going to skip that, if that's okay." A.R. 59. Plaintiff's counsel agreed, but asked Mr. Schmidt, "You have to keep a schedule on these jobs. You have to show up at a certain time, break at a certain time, lunch and a certain time, and go home at a certain time, correct?" Id. Mr. Schmidt answered, "Particularly for unskilled work, yes." Id.

**ALJ Findings**

In his decision dated May 23, 203, the ALJ began by finding that Plaintiff met the insured requirements of the Social Security Act through December 31, 2014. A.R. 18. The ALJ then applied the standard five-step process to determine if Plaintiff had satisfied his burden of establishing disability. Id. The ALJ found that Plaintiff had not engaged in substantial gainful activity since December 28, 2010, the alleged onset date. Id. The ALJ next found that Plaintiff has severe impairments of Bipolar disorder, mood disorder, HIV, and Hepatitis C. Id. In finding those severe impairments, the ALJ discounted Dr. Lucasti's opinion that Plaintiff had no work-related limitations due to HIV or Hepatitis C, because of the side effects of Plaintiff's treatments, and Plaintiff's reports of weakness and fatigue during his consultative examination. Id. However, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. Id.

Next, the ALJ determined that Plaintiff "has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except limited to unskilled work and can have no contact with the general public." A.R. 21. Noting that Plaintiff's claims of disability are based on

9

depression, Anxiety, Hepatitis C and HIV, the ALJ briefly described Plaintiff's testimony. Id. The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible." A.R. 22. The ALJ then described the medical testimony. Id.

To explain his RFC determination, the ALJ first observed that "there is limited objective evidence of record" regarding Plaintiff's physical impairments. A.R. 23. Regarding the opinion evidence, the ALJ gave little weight to Dr. Abenante's opinion, because (1) "opinions as to the ultimate issue of disability are reserved for the Commissioner"; (2) because the opinion "is not 'well-supported' by clinical and laboratory diagnostic techniques and is inconsistent with the claimant's own statement[s]" regarding his abilities; and (3) because Dr. Abenante's history of treatment "does not sufficiently outweigh the lack of supporting credible evidence." Id. The ALJ commented that Dr. Abenante had not sent Plaintiff for psychological therapy, and that the evidence "does not establish significant testing to determine the extent of the claimant's limitations in functioning." Id. Further, the ALJ noted that "Dr. Abenanted has provided very little explanation for his opinion and has simply imparted extreme limitations on the claimant's ability for work despite not having any familiar[ity] with Social Security Regulations and Policy. Id.

In contrast, the ALJ gave "great weight" to Dr. PlaHovinsak's opinion, which "is supported by testing of the claimant along with specific statements made by the claimant regarding his ability to function." Id. The ALJ assigned little weight to Dr. Lucasti's opinion, "because it is not supported by specific references to testing" and because Plaintiff likely suffered some weakness and fatigue due to his medications. Id. The ALJ further noted that

"despite the claimant living at home he is still fairly independent in the activities of daily living which were previously identified in the record as banking, simple meal preparation, hygiene and doing his own laundry." A.R. 23–24. Moreover, the ALJ interpreted Dr. PlaHovinsak's evaluation as implying that Plaintiff's "psychological functioning would improve to a greater degree with proper treatment." A.R. 24.

The ALJ then found that Plaintiff is unable to perform any past relevant work. Id. Finally, considering Plaintiff's age, education, work experience, and residual functional capacity, the ALJ held that there are jobs that exist in significant numbers in the national economy that Plaintiff could perform. Id. The ALJ noted that if Plaintiff had the residual functional capacity to perform the full range of light work, a finding of "not disabled" would be required; however Plaintiff's ability to perform all the requirements of light work "has been impeded by additional limitations." A.R. 25. The ALJ described the vocational expert's testimony that 60–70% of light/sedentary exertional jobs in the national economy are "thing" jobs, which the ALJ defined as meaning "unskilled work with no contact with the general public." Id. The ALJ therefore found that Plaintiff "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy," and that Plaintiff therefore "has not been under a disability, as defined in the Social Security Act, from December 28, 2010, through the date of this Decision." Id.

**Standard of Review**

On a review of a final decision of the Commissioner of the Social Security Administration, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of

11

Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); see

Matthews v. Apfel, 239 F.3d 589, 592 (3d Cir. 2001). The Commissioner's decisions regarding

questions of fact are deemed conclusive on a reviewing court if supported by "substantial

evidence in the record." 42 U.S.C. § 405(g); see Knepp v. Apfel, 204 F.3d 78, 83 (3d Cir. 2000).

While the court must examine the record in its entirety for purposes of determining whether the

Commissioner's findings are supported by substantial evidence, Gober v. Matthews, 574 F.2d

772, 776 (3d Cir. 1978), the standard is highly deferential. Jones v. Barnhart, 364 F.3d 501, 503

(3d Cir. 2004). Indeed, "substantial evidence" is defined as "more than a mere scintilla," but less

than a preponderance. McCrea v. Comm'r of Soc. Sec., 370 F.3d 357, 360 (3d Cir. 2004). "It

means such relevant evidence as a reasonable mind might accept as adequate." Plummer v.

Apfel, 186 F.3d 422, 427 (3d Cir. 1999). A reviewing court is not "empowered to weigh the

evidence or substitute its conclusions for those of the fact-finder." Williams v. Sullivan, 970 F.2d

1178, 1182 (3d Cir. 1992). Accordingly, even if there is contrary evidence in the record that

would justify the opposite conclusion, the Commissioner's decision will be upheld if it is

supported by the evidence. See Simmonds v. Heckler, 807 F.2d 54, 58 (3d Cir. 1986).


**Standard for Entitlement to Benefits**

Disability insurance benefits may not be paid under the Act unless Plaintiff first meets the

statutory insured status requirements. See 42 U.S.C. § 423(c). Plaintiff must also demonstrate the

"inability to engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which has lasted or

can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. §

423(d)(1)(A); see Plummer, 186 F.3d at 427. An individual is not disabled unless "his physical

12

or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). Eligibility for supplemental security income requires the same showing of disability. Id. § 1382c (a)(3)(A)–(B).

The Act establishes a five-step sequential process for evaluation by the ALJ to determine whether an individual is disabled. See 20 C.F.R. § 404.1520. First, the ALJ determines whether the claimant has shown that he or she is not currently engaged in "substantial gainful activity." Id. § 404.1520(a); see Bowen v. Yuckert, 482 U.S. 137, 146–47 n. 5 (1987). If a claimant is presently engaged in any form of substantial gainful activity, he or she is automatically denied disability benefits. See 20 C.F.R. § 404.1520(b); see also Bowen, 482 U.S. at 140. Second, the ALJ determines whether the claimant has demonstrated a "severe impairment" or "combination of impairments" that significantly limits his physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c); see Bowen, 482 U.S. at 146–47 n. 5. Basic work activities are defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b). These activities include physical functions such as "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling." Id. A claimant who does not have a severe impairment is not considered disabled. Id. § 404.1520(c); see Plummer, 186 F.3d at 428.

Third, if the impairment is found to be severe, the ALJ then determines whether the impairment meets or is equal to the impairments listed in 20 C.F.R. Pt. 404, Subpt. P., App. 1 (the "Impairment List"). 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant demonstrates that his or her impairments are equal in severity to, or meet those on the Impairment List, the claimant has satisfied his or her burden of proof and is automatically entitled to benefits. See id. §

13

404.1520(d); see also Bowen, 482 U.S. at 146–47 n. 5. If the specific impairment is not listed, the ALJ will consider in his or her decision the impairment that most closely satisfies those listed for purposes of deciding whether the impairment is medically equivalent. See 20 C.F.R. § 404.1526(a). If there is more than one impairment, the ALJ then must consider whether the combination of impairments is equal to any listed impairment. Id. An impairment or combination of impairments is basically equivalent to a listed impairment if there are medical findings equal in severity to all the criteria for the one most similar. Williams, 970 F.2d at 1186.

If the claimant is not conclusively disabled under the criteria set forth in the Impairment List, step three is not satisfied, and the claimant must prove at step four whether he or she retains the residual functional capacity to perform his or her past relevant work. 20 C.F.R. § 404.1520(e); Bowen, 482 U.S. at 141. If the claimant is able to perform previous work, the claimant is determined to not be disabled. 20 C.F.R. §§ 404.1520(e), 416.920(e); Bowen, 482 U.S. at 141–42. The claimant bears the burden of demonstrating an inability to return to the past relevant work. Plummer, 186 F.3d at 428. Finally, if it is determined that the claimant is no longer able to perform his or her previous work, the burden of production then shifts to the Commissioner to show, at step five, that the "claimant is able to perform work available in the national economy." Bowen, 482 U.S. at 146–47 n. 5; Plummer, 186 F.3d at 428. This step requires the ALJ to consider the claimant's residual functional capacity, age, education, and past work experience. 20 C.F.R. § 404.1520(f). The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether the claimant is capable of performing work and not disabled. Id.


**Plaintiff's Claims on Appeal**

### 1. ALJ's Determination of the Residual Functional Capacity

Plaintiff argues that the ALJ's residual functional capacity ("RFC") determination is unsupported. Plaintiff states that the determination that Plaintiff is capable of light work "amounts too [sic] little more than guesswork," and claims that Plaintiff's fatigue and weakness would "more likely" prevent him "from sustaining an eight-hour workday regardless of exertional requirements." Pl. Br. at 17. In addition, Plaintiff asserts that the limitation to unskilled work with no contact with the general public failed to consider that Plaintiff's anxiety "might very well interfere with his ability to relate to coworkers without distraction or accept criticism from supervisors." Id. at 17–18. Plaintiff also criticizes the ALJ's failure to identify the "mood disorder" from which Plaintiff suffers. Id. at 18. Further, Plaintiff contends that the ALJ erred in rejecting the opinion of Dr. Abenante, Plaintiff's treating physician. Id. at 19. Plaintiff states that ALJ's "preference does not acknowledge that the treating psychiatrist is indeed a medical doctor while the consultant is not," Pl. Br. at 13. Plaintiff further takes issue with the ALJ's reasoning that Dr. Abenante is unfamiliar with social security regulations, and asks "what difference does it make?" Pl. Br. at 24.  Finally, Plaintiff maintains that the ALJ failed to properly evaluate Plaintiff's testimony regarding his subjective symptoms. Id. at 28.

The Commissioner argues that the RFC determination is supported by substantial evidence. Def. Br. at 5. In particular, the Commissioner asserts that Dr. Abenante's assessment was contradicted by the opinions of Dr. Plahvinsak and Dr. Lucasti. Id. at 6. Additionally, the Commissioner asserts that the ALJ properly considered Plaintiff's symptoms, and the extent to which the symptoms are consistent with the objective medical evidence, including the medical opinions. Id. at 10. Overall, the Commissioner states that the ALJ "properly exercised his discretion to conclude that Plaintiff remained capable of at least some work activity." Id. at 11.

"In making a residual functional capacity determination, the ALJ must consider all evidence before him," and must "give some indication of the evidence which he rejects and his reason(s) for discounting such evidence." Burnett v. Comm'r of Soc. Sec., 200 F.3d 112, 121 (3d Cir. 2000). Id. Ultimately, "[w]here the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently." Hagans v. Comm'r of Soc. Sec., 694 F.3d 287, 292 (2012). When looking at the medical testimony, an ALJ must give a treating physician's opinion controlling weight if the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record." 20 C.F.R. § 404.1527(c)(2). The ALJ may also consider other factors, such as the "amount of understanding of our disability programs and their evidentiary requirements that an acceptable medical source has." 20 C.F.R. § 404.1527(c)(6). If, however, a treating physician's opinion conflicts with that of a non-treating physician, "the ALJ may choose whom to credit but cannot reject evidence for no reason or for the wrong reasons." Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000). That is, the ALJ must rely only on "contradictory medical evidence" in rejecting the treating physician's opinion, rather than "credibility judgments, speculation or lay opinion." Id.

Although the Plaintiff presents plausible alternative findings, the ALJ's RFC determination is supported by substantial evidence in the record, and this Court is therefore bound by that decision. The ALJ described the three primary pieces of medical evidence, and indicated that he gave little weight to both treating sources. The ALJ explained that Dr. Abenante's opinion was entitled to little weight because it was not "well-supported" by clinical and laboratory techniques, and because it was contradicted by Plaintiff's statements of his abilities. Although Plaintiff disparages the ALJ's reasoning, the Court finds that the ALJ's

credibility determinations are well-supported. The testing performed by Dr. Abenante, according to the May 24, 2012 Psychiatric report, A.R. 212–215, indicates that Plaintiff has decreased ability to function, but does not support Dr. Abenante's conclusion, in his 2013 letter, that Plaintiff "is unable to do any type of workplace functioning." A.R. 226. Plaintiff claims that "five years of monthly treatment is the explanation" for Dr. Abenante's opinion, Pl. Br. at 23, but the record does not show what medically acceptable clinical techniques used in this course of treatment led to the doctor's conclusions. See 20 C.F.R. § 404.1527(c)(2) (requiring a treating physician's testimony to be "well-supported by medically acceptable clinical and laboratory diagnostic techniques."). The ALJ also appropriately commented that Dr. Abenante "has simply imparted extreme limitations on the claimant's ability for work despite not having any familiar[ity] with Social Security Regulations and Policies." A.R. 23; see 20 C.F.R. § 404.1527(c)(6) (noting that "amount of understanding of our disability programs and their evidentiary requirements that an acceptable medical source has" is relevant factor in weight given to medical opinion). The ALJ's decision to give little weight to Dr. Lucasti's opinion—which Plaintiff does not take issue with—was similarly appropriate. Dr. Lucasti did not indicate any testing to determine Plaintiff's abilities, and the doctor's conclusions were inconsistent with the side effects of Plaintiff's medications and complaints of fatigue. A.R. 23.

Furthermore, the ALJ relied on appropriate medical evidence in rejecting Dr. Abenante's opinion. The ALJ looked to Dr. PlaHovinsak's opinion, which was supported by clinical testing. See A.R. 220 (describing Plaintiff's abilities to count backwards, recall digits, and answer simple math problems). While Dr. PlaHovinsak is a psychologist, not a physician, both physicians and psychologists are considered "acceptable medical sources" who may provide evidence of

17

impairment. 20 C.F.R. § 404.1513(a). Faced with conflicting medical evidence, the ALJ made proper credibility determinations.

The ALJ also properly took into account Plaintiff's testimony of his subjective symptoms. In evaluating symptoms, the ALJ must consider "all your symptoms, including pain, and the extent to which your symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(a); see also Hartranft v. Apfel, 181 F.3d 358, 362 (3d Cir. 1999) ("Allegations of pain and other subjective symptoms must be supported by objective medical evidence."). However, after the ALJ finds a medical impairment which could cause the symptoms, "he or she must evaluate the intensity and persistence of the pain or symptom, and the extent to which it affects the individual's ability to work." Hartranft, 181 F.3d at 362. Thus, the ALJ must "determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it." Id.

Here, the ALJ gave detailed descriptions of the medical evidence that led to his evaluation of Plaintiff's mental and physical capacities. The ALJ described the cognitive testing conducted by Dr. Abenante in May of 2012 and by Dr. PlaHovinsak in July of 2012. A.R. 22. The ALJ also noted that there is "limited objective evidence of record" regarding Plaintiff's physical impairment. A.R. 23. Furthermore, while Plaintiff stated he could not work due to fatigue, Plaintiff also "has not sought treatment for his Hepatitis C, despite his primary care physician recommending it, and that his stamina problems are likely linked to his Hepatitis C." A.R. 23, 22. The ALJ appropriately evaluated the intensity and persistence of Plaintiff's subjective symptoms, based on the medical evidence.

Thus, the ALJ's determination of Plaintiff's RFC is supported by substantial evidence in the record.

**2. ALJ's Determination of Plaintiff's Ability to Perform Other Work**

Plaintiff argues that the ALJ erred in failing to obtain evidence from the vocational expert as to the specific jobs which Plaintiff could perform, their titles as listed <u>Dictionary of Occupational Titles</u>, and the numbers of those jobs in the regional and national economies. Pl. Br. at 35. Plaintiff also asserts that the ALJ failed to consider the vocational expert's testimony that Plaintiff would be unable to sustain unskilled work if Plaintiff's condition led to absences, lateness, or failure to keep pace. <u>Id.</u> at 36. The Commissioner, in response, argues that the vocational testimony, used in combination with the Medical-Vocational Guidelines, found at 20 C.F.R. pt. 404, subpt. P., app'x 2, suggests that Plaintiff is capable of performing 960 sedentary or light occupations, or 160 sedentary occupations, "each representing numerous jobs in the national economy." Def. Br. at 12. Defendant maintains that this evidence was sufficient to meet the Commissioner's burden of proof at step five of the analysis. <u>Id.</u>

At step five, it is the Commissioner's burden to prove that there are jobs in the national economy that the Plaintiff can perform, given the impairments accepted by the ALJ. <u>See</u> <u>Sykes v. Apfel</u>, 228 F.3d 259, 266 (3d Cir. 2000). If work a claimant can do "exists in the national economy"—that is, if "there is a significant number of jobs (in one or more occupations) having requirements which [the claimant is] able to meet with [his] physical or mental abilities and vocational qualifications"—the claimant will not be considered disabled. 20 C.F.R. § 404.1566(b); <u>see also</u> <u>Craigie v. Bowen</u>, 835 F.2d 56, 58 (3d Cir. 1987) (holding that 200 jobs in regional economy "is a clear indication that there exists in the national economy other substantial gainful work which [claimant] can perform."). According to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P., app'x 2 ((hereinafter "the guidelines" or "the grids"), where a claimant has both strength and nonexertional limitations, the rules listed in that appendix may be

19

used "in determining first whether a finding of disabled may be possible based on the strength limitations alone." Id. at ¶ 200.00(e)(2). If no such finding is possible, then "the rule(s) reflecting the individual's maximum residual strength capabilities, age, education, and work experience provide a framework for consideration of how much the individual's work capability is further diminished in terms of any types of jobs that would be contraindicated by the nonexertional limitations." Id. However, "the grids cannot automatically establish that there are jobs in the national economy when a claimant has severe exertional and nonexertional impairments." Sykes, 228 F.3d at 267. In that case, an ALJ must take additional evidence to determine the effect of a nonexertional limitation on residual functional capacity. Id. at 270.

The taking of additional evidence to determine residual functional capacity is preferably done through the testimony of a vocational expert. Jesarum v. Sec'y of U.S. Dep't of Health and Human Servs., 48 F.3d 114, 121 (3d Cir. 1995). Such testimony "'typically includes, and often centers upon, one or more hypothetical questions posed by the ALJ . . . . [W]hether, given certain assumptions about the claimant's physical capability, the claimant can perform certain types of jobs, and the extent to which such jobs exist in the national economy.'" Rutherford v. Barnhart, 399 F.3d 546, 553 (3d. Cir. 2005) (quoting Podedworny v. Harris, 745 F.2d 210, 218 (3d Cir.1984). The vocational expert's testimony, however, "'may only be considered for purposes of determining disability if the question accurately portrays the claimant's individual physical and mental impairments.'" Id. at 554 (quoting Podedworny, 745 F.2d at 218). That is, "the ALJ must accurately convey to the vocational expert all of a claimant's credibly established limitations." Id. "Limitations that are medically supported and otherwise uncontroverted in the record, but that are not included in the hypothetical question posed to the expert, preclude

reliance on the expert's response." Id. On the other hand, if an ALJ has appropriately rejected a limitation, that limitation need not be conveyed to the vocational expert. See id.

Here, because Plaintiff has both exertional and nonexertional limitations, the ALJ properly called a vocational expert to give evidence on the types of jobs Plaintiff could perform, and the extent to which such jobs exist in the national economy. The ALJ presented the vocational expert with Plaintiff's credibly established limitations: the ability to lift/carry ten pounds frequently and twenty pounds occasionally; to stand and walk for about six hours in an eight-hour workday and to sit for about six hours in an eight-hour workday; limited to unskilled work that "does not involve any contact with the general public at all." A.R. 52–53. The limitations suggested by Plaintiff's counsel during the vocational expert's testimony—that Plaintiff would be unproductive and would require additional breaks and days off—were rejected by the ALJ in his RFC determination, see A.R. 21–24. This determination is supported by substantial evidence, as described ante. The ALJ was therefore entitled to rely on the vocational expert's response to his hypothetical, and was not required to consider the additional limitations suggested by Plaintiff's counsel.

Moreover, the vocational expert presented sufficient evidence to show that Plaintiff can perform jobs which exist in the national economy. The ALJ, having defined "thing jobs" as "unskilled work that does not involve any contact with the general public at all," asked the vocational expert to "quantify out of the light and sedentary range what percentage of jobs would be thing versus people." A.R. 53. The expert stated that probably 60 to 70 percent of unskilled jobs in the light and sedentary range were "thing" jobs, while close to 80 percent of sedentary jobs fall into that category. Under the guidelines "[a]pproximately 200 separate unskilled sedentary occupations can be identified, each representing numerous jobs in the national

21

economy," and "approximately 1,600 separate sedentary and light unskilled occupations can be identified in eight broad occupational categories." 20 C.F.R. pt. 404, subpt. P, app'x 2 §§ 201.00(a); 202.00(b). If Plaintiff is restricted only to sedentary occupations, the vocational expert's testimony indicates that he can perform roughly 160 occupations; if he is able to perform light work as well, he can perform between 960 and 1120 occupations. The existence of a 200 jobs in a regional economy has sufficed to show that "other substantial gainful work" exists, and prevented a finding of disability, see Craigie, 835 F.2d at 58. Thus, evidence indicating that Plaintiff can perform a minimum of 160 occupations which exist in the national economy meets the ALJ's burden of proving that Plaintiff is not disabled. See 20 C.F.R. § 404.1566(b) ("if work that you can do does exist in the national economy, we will determine that you are not disabled").  Given the large number of occupations that Plaintiff is qualified for, the ALJ's failure to elicit specific job titles and numbers from the Dictionary of Occupational Titles does not undermine his finding that Plaintiff is not disabled.

Thus, the evidence given by the vocational expert was sufficient to meet the Commissioner's burden of proving the existence of jobs in the national economy which Plaintiff can perform.


**Conclusion**

For the reasons set forth above, I find that the ALJ's decision was supported by substantial evidence in the record. Accordingly, the ALJ's decision is affirmed.  An appropriate Order shall follow.

Dated: _12/102014___                                    /s/ Freda L. Wolfson
                                                        The Honorable Freda L. Wolfson
                                                        United States District Judge